PEOPLE v PARISI

1. SEARCHES AND SEIZURES—AUTOMOBILES—INVESTIGATIVE STOP—SUB-
   TERFUGE.

The right of the police to momentarily stop an automobile and
detain the persons in the vehicle for the purpose of investigat-
ing suspicious activity may not be used as a subterfuge to
enable the police to stop an automobile to observe the contents
of the vehicle.

2. ARREST—AUTOMOBILES—INVESTIGATIVE STOP.

A police officer had a rational basis for stopping the automobile
in which the defendant was riding where the vehicle was
traveling at a slow speed in a rural area at 3 a.m. and the
occupants appeared youthful and possibly in violation of a
curfew ordinance; therefore, the stopping of the vehicle was not
illegal and did not render invalid the subsequent arrest of
defendant.

3. ARREST—PROBABLE CAUSE—ODORS—MARIJUANA.

Probable cause to arrest may arise from the use of a police
officer's olfactory sense; therefore the distinctive odor of burn-
ing marijuana detected by police after stopping an automobile
for investigation would be sufficient probable cause to make an
arrest.

4. DRUGS AND NARCOTICS—MARIJUANA—ODOR—IDENTIFICATION—
   QUALIFICATIONS.

Police officers were qualified to identify an odor as being that of
burning marijuana to establish probable cause to effectuate an
arrest where the officers testified that they were familiar with
the smell of marijuana from their training school experiences
and that they had come in contact with burning marijuana in
the course of their duties.

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 5 Am Jur 2d, Arrest §§ 41, 43.
[5] 5 Am Jur 2d, Arrest § 31.
[6] 21 Am Jur 2d, Criminal Law § 545.

5. Criminal Law—Evidence—Admissibility—Plain View.

A packet of heroin was admissible into evidence where the defendant's act of discarding the substance brought it into the plain view of police officers.

6. Criminal Law—Sentence—Time Served—Credit—Statutes.

A defendant is entitled to credit for time spent in jail prior to sentencing despite the fact that his incarceration prior to sentencing is attributable to another offense since the statute providing for credit for time served is remedial and should be liberally construed to effectuate the salutary purposes of the Legislature in its enactment (MCLA 769.116).

Appeal from Washtenaw, Ross W. Campbell, J. Submitted Division 2 March 6, 1973, at Lansing. (Docket No. 12720.) Decided April 23, 1973. Leave to appeal granted, 390 Mich 773.

Joseph A. Parisi was convicted of possession of heroin. Defendant appeals. Affirmed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John J. Hensel,* Assistant Prosecuting Attorney, for the people.

*Daniel S. Seikaly* and *Michael C. Moran,* Assistant State Appellate Defenders, for defendant.

Before: Danhof, P. J., and Holbrook and Bashara, JJ.

Bashara, J. Defendant was tried and convicted by a jury of possession of heroin and sentenced to serve from three to ten years in prison.

The following facts, adduced at trial, are relevant to our disposition of defendant's appeal.

Officer Root of the Saline Police Department testified that on October 27, 1969, he was on road patrol. At approximately 3 a.m. he observed four or five young people including defendant proceeding west on Michigan Avenue in a 1963 Ford. The

officer followed the vehicle for approximately 1-1/2 miles and clocked their speed as being 25 m.p.h., in a 45 m.p.h. zone. There is a midnight curfew in Saline. Officer Root testified that after observing the youthful appearance of the occupants and the slow speed of the vehicle, he thought he should stop it. As the officer approached the car on the driver's side, the driver rolled down his window and Officer Root stated that he immediately detected a strong odor of marijuana coming from the vehicle.

At this point Officer Root returned to his patrol car and requested that Officer Cohoe come to his assistance. Upon Officer Cohoe's arrival, the occupants were ordered out of the vehicle while it was searched. While defendant was standing outside the car, Officer Root saw something clenched in defendant's fist. Officer Root inquired as to what defendant had in his hand and defendant threw the object into a field. The item was immediately retrieved and was later identified as a brown leather packet containing heroin.

Officer Cohoe testified that when he approached the driver's side of the vehicle, he smelled the odor of burning marijuana coming from the car.

Defendant's first claim of error is that the police officers had no rational basis for stopping the automobile in which he was riding, and thus the stop and his subsequent arrest were illegal.

The Supreme Court in *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), recognized that each and every restraint of a citizen by a police officer does not constitute an arrest. This principle is based upon the policy consideration that the police investigatory process is an indispensable function which necessarily outweighs minor intrusions into a person's right to privacy. *People v Eugene Harris,* 43 Mich App 531 (1972).

In *Adams v Williams,* 407 US 143, 145–146; 92 S Ct 1921, 1923; 32 L Ed 2d 612, 616–617 (1972), Justice Rehnquist, writing for the majority, explained the *Terry* decision as follows:

"In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for the purpose of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' [392 US at 22; 88 S Ct at 1880; 20 L Ed 2d at 906–907]. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. [392 US at 23; 88 S Ct at 1881; 23 L Ed 2d at 907]. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." (Citations omitted.)

Accordingly, a momentary stop for the purpose of investigating suspicious activity may be proper, depending on the facts which are known to the officer at the time the detention is made. However, this right is not an unlimited right. This right to momentarily detain a citizen may not be used as a subterfuge to enable a police officer to stop an individual to observe the contents contained in the vehicle. This limitation was recognized by our Supreme Court in *People v Roache,* 237 Mich 215, 222 (1927), wherein it was stated:

"No one will contend that an officer may promiscuously stop automobiles upon the public highway and demand the driver's license merely as a subterfuge to invade the constitutional right of the traveler to be

secure against unreasonable search and seizure. Yet that is exactly what was done here. The officer cared nothing about seeing a driver's license, but he says he was suspicious that there was liquor in the car, and almost immediately after stopping the defendant he ordered him out of his car and proceeded to search it for liquor."

We must apply these principles to the case at bar to determine whether the stopping of the automobile was justified. Officer Root testified that he stopped the vehicle due to the slow speed at which the vehicle was traveling, the youthful appearance of the occupants, and the possibility of a curfew violation. He testified that the occupants appeared to be from 16 to 18 or "possibly younger". Saline has a curfew ordinance that establishes a 12 midnight curfew for persons under the age of 16. It must also be noted that the stop in question occurred at 3 a.m. in the rural area of Saline, Michigan.

The Michigan Courts have not been presented with a factual pattern as in the instant case. A California Court dealt with a similar situation in *People v Anguiano,* 198 Cal App 426, 429–430; 18 Cal Rptr 132, 134 (1961). There, a police officer stopped defendant's automobile due to its slow speed and the youthful appearance of its occupants. The California Court in upholding the validity of the stop stated:

"We think the officer had a sufficient basis on which to stop the Pontiac and question defendant, the driver. Defendant was not arrested at that point; he was merely detained for the purpose and during the time of making reasonable inquires. Such a detention does not in and of itself amount to an arrest. [Citations omitted.] The existence of facts constituting probable cause to justify an arrest is not a condition precedent to such an investigation."

All of the facts present in *Anguiano* are present in the instant case, plus the additional fact that the officer had a reasonable belief that the occupants were in violation of the Saline curfew. A review of the record further convinces this Court that this stop was made on a reasonable belief that this activity required investigation and was not a mere subterfuge to search the vehicle. Therefore, we hold that the stop in the instant case was valid.

Defendant next challenges the validity of his subsequent arrest on the dual grounds that the mere odor of marijuana is not sufficient to establish probable cause; and even if it is sufficient, there was not an adequate showing that the officers were qualified to identify this odor as being burning marijuana.

Our Supreme Court has acknowledged that search warrants based in whole or in part upon conclusions drawn from the sense of smell are legally sufficient. *People v Thompson,* 238 Mich 171 (1927); *People v Flaczinski,* 223 Mich 650 (1923). In *People v Shorr,* 227 Mich 243, 249 (1924), the Court, in upholding an arrest based on the smell of alcohol, observed:

"It is now settled as a matter of law, as it long has been as a matter of common knowledge, that known distinctive odors, both pleasant and disagreeable, of many things which both men and beasts desire to get or get away from furnish competent and often convincing evidence of the locality or proximity of such things."

We believe that probable cause may arise from the use of an officer's olfactory sense. Defendant contends that the odor of marijuana, by itself, cannot establish probable cause. The argument was rejected by a California Court in *Vaillancourt v Placer County Superior Court,* 273 Cal App 791,

797; 78 Cal Rptr 615, 619 (1969). In that case, officers smelled the odor of burning marijuana emanating from a hotel room and entered the room where they found marijuana. In determining that this was sufficient probable cause, that Court reasoned:

"Here, the officers detected the smell of burning marijuana which would clearly indicate that a crime was being committed in their presence. The burning would also indicate that the evidence was disappearing, unlike the situation in *Marshall* [69 Cal 2d 51; 69 Cal Rptr 585; 442 P2d 665 (1968)] where there was no imminent destruction of the contraband. [Citations omitted.] We therefore conclude that the officers did have probable cause to effect an arrest."

A review of the evidence in this case convinces us that the distinctive odor of marijuana in an automobile would be sufficient probable cause to allow the officers to effectuate an arrest.

Defendant further contends that Officers Root and Cohoe were not sufficiently qualified to identify the smell of burning marijuana. It must be noted that defendant did not object at trial that the officers were not qualified to identify the smell of burning marijuana. Officer Root testified that he had attended classes where the simulated odor of marijuana was placed on display and that he had smelled burning marijuana in the course of his duties. Officer Cohoe stated that he was familiar with the smell of marijuana from his training school experience and that he had come into contact with the smell several times while on road patrol. If the defendant believed that the officers were not qualified to identify the odor as marijuana, he should have raised this objection in the trial court and examined the officers as to their qualifications. Under these circumstances, we find

the officers were qualified to identify the odor as being marijuana.

In light of this conclusion, we further hold that the packet of heroin was admissible into evidence since defendant's act of discarding the substance brought it into the plain view of the officers. *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968); *People v Tisi,* 384 Mich 214 (1970); *People v Carl Smith,* 39 Mich App 337 (1972).

Finally, defendant contends that the trial court erred in not crediting his sentence in the instant case with the 186 days spent in jail in regard to offenses committed between the time of his initial release on bond and sentencing in the instant case.

Defendant predicates his assertion upon MCLA 769.11b; MSA 28.1083(2) which states:

> "Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing."

The statutory provision is remedial and should be liberally construed to effectuate the salutary purposes to be achieved by the Legislature in its enactment. *People v Havey,* 11 Mich App 69 (1968); *People v Grandahl,* 16 Mich App 221 (1969); *People v Hall,* 19 Mich App 95 (1969). This Court has held that a defendant, in a case such as the present, is entitled to credit for time spent in jail prior to trial despite the fact that his incarceration prior to trial is attributable to another offense. *People v Chattaway,* 18 Mich App 538 (1969); *People v Hall, supra; People v Cohen,* 35 Mich App

706 (1971). Under these decisions, defendant is clearly entitled to credit for the time served, even though he was already serving a valid sentence for another offense.

However, the problem facing this Court is that defendant's allegation concerning the 186 days served prior to sentencing are unverified. In light of this, we remand to the trial court for determination of the number of days defendant served prior to sentencing for this offense.

Affirmed in part and remanded.

All concurred.